UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS STRAMAGLIA,
VOLPE-VITO, INC., d/b/a
FOUR BEARS WATER PARK,                    Case No. 06-13764
a Michigan corporation,
MILL CONTRACTORS AND DEVELOPERS, INC.,
a Michigan corporation, and
MELTON ROAD DEVELOPMENT COMPANY,          Hon. John Corbett O'Meara
a Michigan limited liability company,

       Plaintiffs,

v.

UNITED STATES OF AMERICA,

       Defendant.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Before the court is Plaintiffs' motion for partial summary judgment, filed August 10,

2007. Defendant submitted a response on October 19, 2007; Plaintiffs filed a reply brief on

October 26, 2007. The court heard oral argument on November 1, 2007, and granted Plaintiffs'

motion for the reasons stated below.

## BACKGROUND FACTS

The plaintiffs in this action are Louis Stramaglia, Volpe-Vito, Inc. d/b/a Four Bears

Water Park ("Volpe-Vito"), Mill Contractors & Developers, Inc. ("Mill"), and Melton Road

Development Company LLC ("Melton"). Plaintiffs have filed this action, in part, to quiet title to

seventeen parcels of real property owned by Plaintiffs. The IRS has issued federal tax liens

against these parcels because it contends that Plaintiffs are the "nominees, transferees, or alter

egos" of the taxpayers who failed to pay employment taxes: Auburn Park Management Company

("Auburn Park") and Flab, Inc. d/b/a Honey Bear Restaurant ("Flab"). Auburn Park and Flab

owe approximately $150,000 in employment taxes that were assessed between 1997 and 2002.

During the relevant time period, Stramaglia was the sole shareholder of Volpe-Vito.

Volpe-Vito owned real property in Shelby Township, Michigan, including a small lake. During

the 1980s, Volpe-Vito developed the property into a water park/recreation facility known as Four

Bears Water Park.

Flab was incorporated in 1983 by its sole shareholder, Frank Stramaglia, Plaintiff's

brother. Flab was established to build and operate a restaurant (Honey Bear Restaurant) within

the water park. Flab entered into a lease with Volpe-Vito and acquired a liquor license. Frank

Stramaglia was Flab's sole shareholder until his death in 1990. Thereafter, Nancy Stramaglia,

Frank's sister, became the sole shareholder and director.

Auburn Park was formed in 1992. Nancy Stramaglia was its incorporator and sole

shareholder. Auburn Park entered into a concession agreement with Volpe-Vito to operate and

manage the park, except for the restaurant. In 1994, Nancy transferred her shares in Auburn

Park to Plaintiff Louis Stramaglia, who became the sole shareholder and director. The

concession agreement between Auburn Park and Volpe-Vito was terminated in 2001, because

Auburn Park was unable to comply with its terms. Thereafter, Volpe-Vito managed and

operated the park until it closed in 2004.

Mill was originally incorporated under a different name by Louis Stramaglia and Frank

Stramaglia as a construction company. Later, the company began to focus on real estate

development rather than construction. The owners changed the name to Mill Contractors &

Developers, Inc., in the 1990s. Mill did much of the construction work at the park under

contract with Volpe-Vito. According to Plaintiffs, Mill engaged in no transactions with Flab or Auburn Park. After Frank Stramaglia died, Louis Stramaglia became the sole shareholder of Mill.

Melton was formed in 2003 as a limited liability company to do construction and real estate development. Its original members were Mill, Sam Meram, and Tony Hermiz, with each owning one-third. In May 2005, Louis Stramaglia acquired an interest and now Melton is owned by all four. Melton has had no dealings with Auburn Park or Flab.

Apparently the water park and the related companies were profitable and paid their taxes for many years, up until the late 1990s and early 2000s. During that time, the park struggled financially due to competition from municipal water parks, earlier back-to-school schedules, and poor weather. In 1999, Auburn Park's revenue fell by approximately 40% of what had been generated in 1995. The falling revenues left Auburn Park unable to pay amounts due to Volpe-Vito under the concession agreement. Volpe-Vito terminated the concession agreement as of December 31, 2001. Volpe-Vito attempted to operate the park after that but was unsuccessful. Volpe-Vito closed the park in 2004. Flab also ceased operations at that time, being unable to survive without the park.

To satisfy Auburn Park and Flab's employment tax liability, the IRS is pursuing Stramaglia, Volpe-Vito, Mill, and Melton, alleging that they are alter egos, nominees, or transferees of Auburn Park and Flab. Plaintiffs have filed this motion for summary judgment, contending that they are not alter egos of Auburn Park or Flab as a matter of law.

## LAW AND ANALYSIS

The court applies Michigan law in conducting the alter ego analysis. See PBV Inc. v.

Rossetti, 1999 U.S. App. LEXIS 6393 (6th Cir. 1999); Towe Antique Ford Foundation v. IRS,

999 F.2d 1387, 1391 (9th Cir. 1993) ("We apply the law of the forum state in determining

whether a corporation is an alter ego of the taxpayer."); U. S. v. Scherping, 187 F.3d 796, 802

(8th Cir. 1999).  Under Michigan law, "where [a] corporation is a mere agent or instrumentality

of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored."

Porta-John of America v. United States, 4 F. Supp. 2d 688, 700 (E.D. Mich. 1998) (citation

omitted).  The corporate veil "may be pierced only when an otherwise separate corporate

existence has been used to subvert justice or cause a result that is contrary to some overriding

public policy." Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., 475 F.3d 783, 798 (6th

Cir. 2007) (quoting Seasword v. Hilti, 449 Mich. 542, 537 N.W.2d 221, 224 (1995)).  "Michigan

courts will not pierce the corporate veil unless (1) the corporate entity was a mere

instrumentality of another entity or individual; (2) the corporate entity was used to commit a

fraud or wrong; and (3) the plaintiff suffered an unjust loss." Id. (citation omitted).

In this case, it does appear that the corporate form was not always respected and that

some transactions between the companies were not at arms length.  There is no evidence,

however, that Auburn Park and Flab were mere sham corporations created to avoid legal

obligations.  The bare fact that Auburn Park and Flab were unable to pay their taxes does not

satisfy the "fraud or wrong" requirement.  Auburn Park and Flab did pay their taxes for many

years, and paid some of their taxes due (over $100,000) during the years at issue here, 1997 to

2001.  There is no evidence that Auburn Park or Flab were created or used to avoid legal

obligations or "commit a fraud or wrong."

The government appears to suggest that there is no "fraud or wrong" requirement under

federal common law and that federal law should apply. Even if federal law did apply, however, there is a "fraud or wrong" prerequisite to piercing the corporate veil. See NLRB v. Great Kansas Roofing, 2 F.3d 1047, 1052 (10th Cir. 1993) ("We require an element of unfairness, injustice, fraud, or other inequitable conduct as a prerequisite to piercing the corporate veil."). The Great Kansas Roofing court explained:

> It should be emphasized that the showing of inequity necessary to satisfy the second prong must flow from the misuse of the corporate form. The mere fact that a corporation commits an unfair labor practice, or breaches a contract, or commits a tort, does not mean that the individual shareholders of the corporation should personally be liable. To the contrary, the corporate form of doing business is typically selected precisely so that the individual shareholders will not be liable. It is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced. In most cases the mere fact that a corporation is incapable of paying all its debts is insufficient for a finding of injustice. That condition will exist in virtually all cases in which there is an attempt to pierce the corporate veil.

Id. at 1053 (emphasis in original). In Great Kansas Roofing, the court refused to pierce the corporate veil despite the fact that the individual owner of the company "admittedly failed to comply with corporate formalities and even commingled some corporate assets with her personal assets." Id. at 1055. The court noted that the owner loaned the company $30,000 of her own funds and there was no evidence that she "looted the company" to make it unable to pay its obligations. The court found that there was no evidence that the disregard of corporate formalities was used to perpetrate fraud or cause an injustice.

Similarly, in this case, Louis Stramaglia and Volpe-Vito infused funds into Auburn Park totaling almost $200,000 between 1996 and 2002. Stramaglia and Volpe-Vito infused funds into

Flab totaling about $45,000 during the same period.  There is no evidence that the corporate form was manipulated in order to avoid paying taxes.  Compare Grass Lake All Seasons Resort v. United States, 2005 U.S. Dist. LEXIS 22448 (E.D. Mich. Aug. 29, 2005) (Borman, J.) (piercing corporate veil where alter ego "looted" corporation for personal use, did not have his own bank account or property in his own name, and used the company to avoid paying taxes for over ten years).  Although the companies were engaged in transactions that were not arms' length, the evidence suggests that Stramaglia was attempting to keep the companies afloat, not drain them of cash to avoid legal obligations.  Therefore, the court finds that Plaintiffs are not alter egos of Flab and Auburn Park and that piercing the corporate veil under that theory is unwarranted.

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' August 10, 2007 motion for partial summary judgment is GRANTED, consistent with this opinion and order.


s/John Corbett O'Meara
United States District Judge


Date:  December 13, 2007




I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 13, 2007, by electronic and/or ordinary mail.


s/William Barkholz
Case Manager