UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS STRAMAGLIA, *et al.,*

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____/

Case No. 06-13764

Hon. John Corbett O'Meara

## OPINION AND ORDER GRANTING THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Before the court are cross-motions for summary judgment: the United States's motion against Volpe-Vito, and Plaintiffs' motion against the United States, both filed January 11, 2008. Both motions have been fully briefed. The court heard oral argument on February 21, 2008, and took the matter under advisement. For the reasons set forth below, the court grants the United States's motion and grants Plaintiffs' motion in part.

## BACKGROUND FACTS

The Plaintiffs in this action are Louis Stramaglia, Volpe-Vito, Inc., Mill Contractors and Developers, and Melton Road Development Company. Plaintiffs have filed this action, in part, to quiet title to seventeen parcels of real property owned by Plaintiffs. The IRS has issued federal tax liens against these parcels because it contends that Plaintiffs are the "nominees, transferees, or alter egos" of the taxpayers who failed to pay employment taxes: Auburn Park Management Company and Flab, Inc. d/b/a Honey Bear Restaurant. Auburn Park and Flab owe approximately $150,000 in employment taxes that were assessed between 1997 and 2002.

This is the second round of summary judgment motions filed in this case. Previously, Plaintiffs filed a motion for partial summary judgment on the issue of alter ego/piercing the corporate veil. The court granted that motion, finding that Plaintiffs were not the alter egos of Auburn Park or Flab and were, therefore, not liable for those companies' tax liabilities under that theory. As an alternative argument, the government contends that Plaintiff Volpe-Vito is the successor or nominee of Auburn Park and thus liable for Auburn Park's tax liabilities. Plaintiffs contend that none of them are the nominees, successors, or transferees of Auburn Park or Flab. The government concedes that none of the Plaintiffs are the nominees, successors, or transferees of Flab and that Plaintiffs Melton Road Development company and Mill Construction are not the nominees, successors, or transferees of Auburn Park. Accordingly, the court will grant Plaintiffs' motion for summary judgment on these issues. The only remaining issue, therefore, is whether Volpe-Vito is the successor or nominee of Auburn Park.[1]

During the relevant time period, Stramaglia was the sole shareholder and president of Volpe-Vito. Volpe-Vito owned real property in Shelby Township, Michigan, including a small lake. During the 1980s, Volpe-Vito developed the property into a water park/recreation facility known as Four Bears Water Park.

Auburn Park was formed in 1992. Nancy Stramaglia was its incorporator and sole shareholder. Auburn Park entered into a concession agreement with Volpe-Vito to operate and manage the park, except for the restaurant. In 1997, Louis Stramaglia became president and

---

[1] Plaintiffs contend that the issue of successor liability was encompassed by the court's ruling on the alter ego issue. As set forth below, however, different legal standards apply to each of these theories. Further, the court finds no legal basis to preclude Defendant from raising the successor liability theory at this time.

Thomas Nepa became secretary of Auburn Park. Louis Stramaglia became the sole shareholder and director of Auburn Park in 1998.

Plaintiffs contend that the water park and the related companies were profitable and paid their taxes for many years, up until the late 1990s and early 2000s. During that time, the park struggled financially due to competition from municipal water parks, earlier back-to-school schedules, and poor weather. In 1999, Auburn Park's revenue fell by approximately 40% of what had been generated in 1995. The falling revenues left Auburn Park unable to pay amounts due to Volpe-Vito under the concession agreement. Volpe-Vito terminated the concession agreement as of December 31, 2001. Thereafter, Auburn Park continued to exist "in name only." Volpe-Vito attempted to operate the park after that but was unsuccessful. Volpe-Vito closed the park in 2004.

## LAW AND ANALYSIS

### I. Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### II. Successor Liability

The government seeks to hold Volpe-Vito liable for Auburn Park's tax liability under the theories that Volpe-Vito is the "successor" or "nominee" of Auburn Park. With respect to successor liability, "Michigan follows the universally-accepted general rule that a corporation

that purchases the assets of another corporation does not, simply by virtue of the asset purchase transaction, become liable for the obligations of the seller." City Mgmt. Corp. v. U.S. Chem. Co., Inc., 43 F.3d 244, 251 (6th Cir. 1994) (citing Turner v. Bituminous Cas. Co., 397 Mich. 206 (1976)).

> The traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations. If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies. The five exceptions are as follows:
> "(1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation."

Foster v. Cone-Blanchard Mach. Co., 460 Mich. 696, 702, 597 N.W.2d 506 (1999) (quoting 19 Am. Jur. 2d, Corporations, § 1546, pp. 922-924).[2] The government contends that two of the above exceptions apply: that Volpe-Vito is a "mere continuation" of Auburn Park, and that there was a de facto merger between Volpe-Vito and Auburn Park. Because the court finds that Volpe-Vito is a "mere continuation" of Auburn Park, the court will not address the government's

---

[2] Michigan law with respect to the "mere continuation" exception is not extensive; accordingly, the court will also consider cases from other jurisdictions applying the general rule. The court declines the government's invitation to apply federal common law regarding successor liability to this case. Generally, federal common law regarding successor liability has been applied in pension rights and labor cases. Other courts have rejected the application of federal common law to tax cases. See, e.g., Whelco Indust. Ltd. v. United States, 526 F. Supp.2d 819 (N.D. Ohio 2007).

de facto merger or nominee theories.

A "'mere continuation of business' will be found where the purchasing corporation is merely a 'new hat' for the seller with the same or similar management and ownership." Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 650 (5th Cir. 2002) (Florida law). In other words, a "mere continuation" will be found "where one corporation is absorbed by another, as evidenced by an identity of assets, location, management, personnel, and stockholders." Id. In interpreting Ohio law, the Sixth Circuit framed the issues as follows:

> Under a "mere continuation" theory of successor liability, it is not enough to show that the purported successor has "the same physical plant, officers, employees and product line as" the purported predecessor. Rather, "the basis of this [mere continuation] theory is the continuation of the corporate entity, not the business operation, after the transaction," such as when one corporation sells its assets to another corporation with the same people owning both corporations. "[T]he key element in establishing continuation is a common identity of stockholders, directors, and stock."

Mickowski v. Visi-Trak Worldwide LLC, 415 F.3d 501, 510 (6th Cir. 2005) (citations omitted). Accord Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451, 1458-59 (11th Cir. 1985); Kelley v. Thomas Solvent Co., 725 F. Supp. 1446 (W.D. Mich. 1988). "The traditional 'mere continuation' exception to the general rule of purchaser nonliability 'encompass[es] the situation where one corporation sells its assets to another corporation with the same people owning both corporations." City Management, 43 F.3d at 251.

Under the standard articulated above, the court finds that Volpe-Vito was a "mere continuation" of Auburn Park. Both entities were solely owned by Stramaglia, who was also the president of both companies. Thomas Nepa was the secretary and in-house accountant/bookkeeper of both companies. Auburn Park owned minimal assets at the time it

stopped operating the water park; subsequently, some assets were transferred to Volpe-Vito. There was no sale agreement regarding the transfer of assets. When Auburn Park stopped operating the park, Volpe-Vito took over park operations, using the same assets, location, and management as Auburn Park had used.

Volpe-Vito protests that it is not a "mere continuation" of Auburn Park because (1) there was no transfer of substantially all of Auburn Park's assets to Volpe-Vito; and (2) there is no evidence that the assets were purchased for inadequate consideration or that the transaction allowed the avoidance of liability in a way that amounted to fraud. Volpe-Vito claims that it only took possession of about $14,000 of Auburn Park's "miscellaneous equipment."[3] According to Volpe-Vito, Auburn Park had $300,000 in receivables in 2001 and these assets were not transferred to Volpe-Vito. The government responds that Auburn Park never had significant assets and was in fact formed to operate the park and protect the assets of Volpe-Vito (park and landowner) from liability. Further, the government notes, and Volpe-Vito does not dispute, that the receivables were never paid and were later forgiven as uncollectible.

Consistent with guidance from other circuits, this court declines to "elevate form over substance" when addressing the issue of successor liability. See Patin, 294 F.3d at 651-52; Kaiser Foundation Health Plan v. Clary & Moore, P.C., 123 F.3d 201, 205 (4th Cir. 1997). In light of all the circumstances of this case, Auburn Park's retention of uncollectible assets does not defeat successor liability. Auburn Park was formed to shield Volpe-Vito's assets and intentionally did not have significant assets of its own. Volpe-Vito and Auburn Park did not

---

[3] Some assets from an Auburn Park investment account were also transferred to Volpe-Vito, although the record does not disclose the amount.

enter into an arms' length asset purchase agreement.  Further, Auburn Park did not continue to operate or retain significant assets; it essentially had no assets, particularly in light of the fact that the "receivables" were never collected.  See Nepa Dep. at 34 (accountant acknowledging that Auburn Park had no assets "once we transferred the personal property").  See also Patin, 294 F.3d at 651 ("[T]he fact that the entirety of the predecessor's assets were not transferred to the successor does not render the mere continuation exception inapplicable.").

Volpe-Vito also argues that successor liability cannot attach because there is no evidence that the assets were purchased for inadequate consideration or that the transaction allowed the avoidance of liability in a way that amounted to fraud.  It does not appear, however, that Michigan law requires evidence of inadequate consideration or fraud for the "mere continuation" exception to apply.  The Michigan case law regarding this exception, although not extensive, does not mention these factors.  The legal standards used in other jurisdictions are not uniform enough to suggest that inadequate consideration or fraud are required for the "mere continuation" exception to apply.  Compare Patin, 294 F.3d at 649-50 (no mention of inadequate consideration or fraud as elements under Florida law); Thomas Solvent, 725 F. Supp. at 1458-59 (same under Michigan law); Bud Antle, 758 F.2d at 1458-59 (same under Georgia law); with Orthotec, 438 F. Supp. 2d at 1133 (showing of inadequate consideration required under California law); Kaiser, 123 F.3d at 205 (noting adequate consideration and whether transaction was arms'-length are factors to consider under Virginia law, but stating that "there is no absolute legal standard for determining whether one corporation is in fact a mere continuation of another").

In this case, Volpe-Vito essentially absorbed Auburn Park, as evidenced by the identity

of ownership, officers, management, location, and assets used in the operation of the water park. Volpe-Vito continued to operate the water park just as Auburn Park had. Further, the policy reasons underlying the doctrine of successor liability support its application here. "The historical basis for imposing successor liability is founded on principles of equity that seek to prevent creditors of the original corporation from being left without a remedy while the corporation escapes responsibility by transferring its assets into a new form." Thomas Solvent, 725 F. Supp. at 1459.

## **ORDER**

For the reasons set forth above, the court finds that Volpe-Vito is a "mere continuation" of Auburn Park and that successor liability for Auburn Park's tax deficiencies attaches.

Therefore, IT IS HEREBY ORDERED that Defendant's January 11, 2008 motion for summary judgment is GRANTED, consistent with this opinion.

It is further ORDERED that Plaintiffs' January 11, 2008 motion for summary judgment is DENIED in part and GRANTED in part, consistent with this opinion.

s/John Corbett O'Meara
United States District Judge

Date: March 18, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 19, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager